May it please the Court, Michael Kometa appearing on behalf of the appellants. I plan to spend five or six minutes discussing the theme of this case, which also emphasizes my client's strongest point, and if possible, I'd like to reserve five minutes of rebuttal time. Discussing the overall theme in this case will help the Court see the big picture. Going beyond the law for a moment, as a matter of public policy, fairness, and justice, the societal costs of banning vehicle refitting are too high as opposed to any benefit to the City. In the absence of evidence, establishes that the ordinance cures no evil. But the law does ban an important type of speech, identified by the Supreme Court as essential to the poorly financed causes of little people. In this case, the City is banning political activists from walking on public streets and sidewalks, where speech is greatly protected, to place leaflets on private property, where speech is even more protected, to cure a problem that the City has failed to prove even exists. Because it failed to offer any evidence whatsoever that vehicle leafletting causes a litter problem in the City. The law is unconstitutional for many independently dispositive reasons, but when all of these issues are distilled to their core, this case really revolves around the same central issue. Does a complete ban on vehicle leafletting create a proper balance between an unproven problem, litter prevention, and the constitutional right of free speech?  If the problem did exist, the City has far less restrictive alternatives from which to choose to properly balance litter prevention against free speech. But it doesn't have to use the very least restrictive, does it? That is correct. And there's a two-part test, one of which the Court just stated, the other part is whether there are less restrictive alternatives. In this case, the City has at least three less restrictive alternatives. If someone actually receives a leaflet and discards it, they can find that person for litter. They can have a long place to require that leaflets are securely placed on vehicles, for example, under a windshield wiper, so a litter problem is not created. And they can also place the burden and the burden on the City to demand that if someone doesn't want speech on their own private property, in this case, vehicles, that person can put a sign with fiber on the vehicle. But, so, I mean, it seems to me that's all very simple and straightforward. But what's harder about this case, or what, is if you start thinking that the putting it on the car is litter, or visual blight. And it seems to me your hardest case is taxpayers versus fence. So it would be helpful to me if you center your argument around that question. In other words, it seems to me if their problem is people are going to get the pieces of paper and throw them on the floor, then Schneider and that whole line of cases are fairly dispositive. But if their problem is we don't want people having to walk around the streets seeing pieces of paper on cars, that's, it seems to me, and as I understand it, the way the courts have dealt with this issue, too, is to look at that as the litter, or as visual blight, one or the other. And it would be helpful to me if you addressed the issues that way. Sure. And there's a big difference between taxpayers for Vincent where it would involve signs. Because people were hanging signs for political campaigns, for other reasons, probably for concerts. And those signs would hang maybe 30 days, 60 days. No one ever took them down. And over time, they fell down, and they create a blight problem, they create a litter problem, because of the amount of time that these signs were hanging on public property. In this case, you're dealing with simply a leaflet that's placed on a vehicle, and someone's going to come back in 5 minutes, 10 minutes, maybe an hour or two, and they're going to take that leaflet off the vehicle, especially if it's security. And the other difference with taxpayers for Vincent is that case dealt with only the control of the government over its very own property, which were, and I make a big point of that in my briefs, the fact that that case dealt with utility poles, which this Court stated were public property, and the government was simply controlling its own property and saying, listen, people. No, this Court didn't state that. This Court got reversed. Not on that issue. Not on the factual issue that it was government that was actually controlling its very own property. Here, the government is trying to control private property. Would it make any difference if those telephone poles were privately owned? That's actually a pretty good question. Well, I agree with that. Well, as the signs, like I said, there's a big difference between signs and leaflets, when we're dealing with leaflets. Well, it certainly would make a difference if the people who owned the signs wanted the, who owned the poles wanted the signs on them. Oh, absolutely. And there's a big difference between an ordinance where the owner, if you don't want, for example, let's take a shopping mall. If you don't want people to place leaflets on vehicles located in your shopping mall, we're passing this ordinance so you can prohibit that. Okay. And there's a big difference between that type of ordinance and an ordinance which says — A prohibition for them. Exactly. That no matter whether you're an unwilling recipient or whether you're just an uncommitted listener who may or may not want — I mean, isn't Judge Minor's example essentially Metro Media and all the billboard cases? In other words, if people want to put signs on their own property, then there's a whole different set of laws. Exactly. Which is much less forgiving in terms of the government's interests. Exactly. You know, property owners have a bundle of rights, and one of those bundle of rights is to exclude property on their — you know, exclude speech on their property. And again, there's a huge difference between that and the government just saying, listen, you can't put these leaflets on any private property, even if someone willingly wants these leaflets. Of course, we don't know who wants them and who doesn't want them, which is one of the prime difficulties with allowing this. Suppose you — I mean, suppose instead of the leaflets, somebody puts a large poster on the car. Well. According to your argument, that would be allowable also. No.  Because if you read the Joe case carefully, the ordinance differed from this one because it actually precluded people from placing any kind of stickers, like bumper stickers, on someone else's car. I'm just saying you take a big poster carrying your message and you put it on the car. Under your argument, that seems to be acceptable. No, because there's a difference between a leaflet in which you're giving information for someone to accept and read and the public display on a vehicle for third parties to look at. There's a big difference between those two scenarios. You're saying this ordinance is unconstitutional on its face. Is that right? As a — well, on its face and as applied to the facts of this case. Well, I'm talking about now on its face. It just says don't throw anything on the cars. Is that what it says, basically? I believe so, yes, Your Honor. So that includes leaflets or anything else. I believe so. Let me take a quick look at the actual language of the law. What the law says is no person shall throw or deposit any commercial or noncommercial advertisement in or upon any vehicle. So, yes, it would include any backyards or large signs like that as well. And, again, the city hasn't produced any evidence of any such problem. You're making both an on its face and as applied challenge. Yes, Your Honor. On its face challenges are not very popular these days. That's correct. And on its face is mostly as to the fact that it's facially overbroad, because it not only bans speech that might create a problem, but it bans speech by its very nature that wouldn't cause a problem. For example, to willing recipients. They're willing, so they're not going to litter. And also for the situation where leaflets are placed underneath a windshield wiper. But we could decide both of those questions just based on the actual facts of the case. Absolutely, yes. Because as far as I can tell, you were putting – there was no evidence that there were any signs on any of the cars saying don't put stickers on here, or don't put leaflets on here, and there's no evidence that these were anything but plain old leaflets, right? That's correct. We didn't have the leaflet. We know what it was. It was just a piece of paper. I believe the actual leaflet is in the record as an exhibit to Mr. Klein's declaration. But there's nothing that requires you to put it under the windshield wiper, either. You could just lay it on the car, right? Well, that's one of the reasons the ordinance isn't narrowly tailored, because one of the situations where the city could come in and narrowly tailor this ordinance is by requiring someone to put a leaflet under a windshield wiper, so there's no way that the wind or rain could actually blow the leaflet away. And if you read the facts, that's exactly what my clients were doing. They were actually placing these leaflets under the windshield wipers on vehicles. There's a lot of dispute in the record and with the district court and so on about what's, A, do we apply, does it matter if we apply California law or Federal law? Does it matter if we look at this as public or private property? Do all of those different theories all come out in the same place, which is we apply a time, place, or amount of standard. Is that right? So ultimately, it all doesn't matter. Well, it's a little unclear between California law and even among Federal law where this whole idea of the right to receive speech and willing recipients falls in. Because sometimes courts look at it under a narrowly tailored test. Sometimes they look at it under facial overbroad. And in some cases, especially under California Supreme Court law, they kind of look at it as its own unique test that stands by itself. Well, ultimately, when this case comes back on the merits, is it your suggestion that it should be decided under California law or under Federal law? Well, California law is more appropriate because the Ninth Circuit has stated that if you can decide it under the California Constitution, then you should to avoid any Federal questions. And like I just stated, there is a slight difference between them because California law under the Van Nuys decision seems to look at willing recipients as an independent test that's independent from the three-pronged test under time, place, and manner. And that case even refers to uncommitted listeners. So it has a little bit of a looser standard than willing recipients. So Judge Ronhart just alluded to something that's important. What really do we have to decide in this case? Given that this is a preliminary injunction appeal, and given that there is a lot of law, as you point out, that a First Amendment interest is almost automatically in this circuit, an irreparable harm, and given the fact that everybody has been fighting so hard about where this – there are two circuit court cases that come out opposite way, there's lots of paper being strewn about the First Amendment implications of this case, there's certainly a serious First Amendment problem. Do we have to decide anything else? Should we decide anything else now other than there's a serious First Amendment problem? Well, yes. So my clients obviously want to get back on the streets and continue to hand out leaflets. What Judge Bertham is saying is on a preliminary injunction, as opposed to the merits, the issue is, is there a serious legal question? And if so, is the balance of hardships in your favor because there's a purported interference with the First Amendment? Is that the proper test? And if you do present a serious legal issue, and if under your theory there's a serious – there's an interference with the First Amendment, and that would entitle you to a preliminary injunction, we could answer that question possibly in your favor. But your clients go back on the street, and then you go back to the district court, and then it would decide the merits, and then it would come back again. I guess one question we could ask you both is whether you want us to treat this as a preliminary injunction issue, in which case, as Judge Bertham said, the issue is not very difficult. We don't have to decide any of the kinds of questions you're raising. Or are you – are you both interested in getting a final decision and stipulate to that this would be the injunction on the merits? I would be willing to do that, because the facts are undisputed in this case. They're very simple. Well, it would take both of you to say that, so we'll ask your opponent the same question, is it? Absolutely, Your Honor. All right. You wanted to save five minutes. You've got six and a half, basically. Thank you. May it please the Court. Ned Richards, representing the City of San Clemente. Maybe we ought to start out with the same question. It's a fairly narrow question if we're just going to decide the preliminary injunction question. My response to it is the opposite. You want us just to decide the preliminary injunction? Yes, Your Honor. Okay. So then that's what we ought to be discussing. Is there a serious legal issue? And in this case, I think for the reasons that the district court concluded there is not primarily – Well, he didn't exactly put it that way. No, they didn't put it that way. And he really didn't. So he wasn't exactly deciding the right question for whatever reason. I don't know why that was. But he went much further toward a decision on the merits. Given the First Amendment context here, then he really needed to go, it appears to me. Well, I don't disagree with that. If I may make this observation, this is a First Amendment case, and like I think all First Amendment cases, it's a matter of balancing the government's interest and the individual's First Amendment interest. And in this case, the rights under the California Constitution. Right. Okay. It's clear under California that even on private property, there is a right to free speech. There's no doubt about that. But there's also no doubt that that right to free speech or expression, even on private property, is not unrestricted. Of course. And if we – But this is a little different because, I mean, there's been a lot of argument about whether this is a public forum case or a private property case, and the truth is it's both. I think it makes no difference. And it may not make a difference. It also may not make a difference. But in Pruniard and those cases, what you have is the government imposing on the private property, on owners of private property, the requirement to allow other people to perform speech on their property. Over their objection. Over their objection. Right? Correct. And the point that's being made here is that that's not really the issue here because no one's given – no one cares whether there's an objection. It doesn't matter if there's an objection. That would be correct under this. So I don't see how this is similar to the California cases, which from the point of view of the private property regulation, have recognized that the private property owner can set – essentially set regulations as to when they're going to allow speech on their property. It's just not analogous. It's not the same problem. Well, when I make reference to the California cases, the point that I was trying to make was this, that whether it's private property or it's public property, if you look at, I think, the totality of the cases that have been decided, they are all decided the same way. They apply the time place and manner. All right. If the government says to me, in your house can't have a political meeting except under time and place and manner restrictions, they can't do that. Right? Correct. It's my private property and I can use it as I please for speech if I want to do it. I don't disagree with that. Okay. So that's the problem because Pruniard and those cases are about the opposite scenario. Right? And here you're making an assumption that people don't want these flyers on their property, but you don't know that. Well, actually, we're making the assumption, the government is making the assumption that some people don't want it. I mean, we can see that some people do. And so there's a very easy way to deal with that, which is to tell people who don't want it to put a little sticker. There are lots of stickers on cars that says, no flyers, please. Well, in all due respect, I think that is pie in the sky. Theoretically, that would be nice, but I think that's unenforceable. Well, suppose that the Los Angeles Times decided to give away Sunday newspapers in order to get new subscribers, and they went down the road and threw over the fence a whole Sunday edition of the papers, and the local government said you couldn't do that. You've got a different kind of problem. An aesthetic problem fits into this. Does it not? I think it fits into both situations. I mean, whether the person wanted that Sunday Times or not, that person is going to get it. But it may glitter the whole neighborhood. Correct. So I think that there may be an analogy there. But my question is about the balance of hardships. If we're going to talk about the preliminary injunction, where do the hardships lie preliminarily? It doesn't seem to lie with those who want to distribute because they have other means of communication. Agreed. Whereas? Have I made your argument for you? You did, Your Honor. Thank you very much. On the other side, if the ordinance is struck down, then the government has no way to regulate the perceived problem of litter with regard to private automobiles. Do you really think the government could pass a statute saying that people can't give free newspapers to people on their own property? I'm sorry? Do you really think the government could pass an ordinance saying that newspapers couldn't distribute, put their newspapers in my driveway? Sunday edition. Sunday edition. How about the Monday edition? Let's say the Monday edition. There's very little left of it with the Los Angeles Times. That's true. You know, what I couldn't find, are there any cases, there are all these cases about going door to door, which obviously do allow, do say that there are limitations to government's ability to protect private property owners when the countervailing issue is speech, and essentially propose the solution. You can put a, if you don't want somebody there, put a sign up, and that can be enforced. But are there any cases specifically about leaving leaflets on porches, for example? Not that I'm aware of, Your Honor. I mean, there's some sense in the cases that that's less intrusive. And, you know, you should, I mean, I'm reading through the cases last night. I mean, one of the dissents says, well, they shouldn't be able to knock on the door, but they should be able to leave the leaflets on the porch. But there's no exact case on that, is there? Not that I'm aware of, no. What are we to make of the fact, is there any evidence in the record or anywhere else, that this is really a problem? I mean, that for the city, any concrete, at least on a preliminary injunction level. If you look at the record, I think what the record demonstrates is in generalities, that litter is a problem, and that... But litter, I mean, by litter you mean stuff on the floor. I mean, there's just too many Supreme Court cases. No, I agree with you. We're talking about litter on the ground. We're not talking about the flyer on the wall. So you're talking about stuff on the ground. Correct. But there's myriad Supreme Court cases about that. But I think what the record reflects in response to your first question is that if the pamphlets are displayed in this way, they're going to end up, a majority of them are going to end up on the ground. Where is the record of that? I can't point it out to you. I don't think it's there. I don't think there's any evidence at all. The only evidence is the plaintiffs, which isn't very informative either, that they have experiences that very little of those on the ground. There's nothing from the city as far as I know. Zero. I think it's zero. I can't point to it. I don't think there are any affidavits on this. And the plaintiffs are just anecdotal. I mean, they're just observations. Correct. Correct. You're right. You're correct. But what we do have is a limitation on speech, on the one hand, and a limitation which Judge Minor points out may not be a ban because there are other ways that you may be able to communicate your message, such as a television advertisement that your opponent says like Britney Spears. So you can do it that way if you can spend a million dollars. Or maybe some other way, stop people on the street and say, by the way, I want to tell you about this wonderful initiative we have. You know, try to talk. Or distribute it to occupants of vehicles. Yeah. You can give it to the people who happen to be sitting in their cars. So you're not totally prohibited from doing it, but you hope you'll reach more people. And then on the other hand, you have the desire not to have litter on city streets, but without any showing that how much litter it results in, if any. You know, we may all suspect that there will be a lot of litter. And we get the fact that the city council has passed an ordinance because they fear litter. And isn't that about all we have before us? In one case, we know it limits it, and we have the affidavit. And we know there are other ways to make speech. And on the other hand, we know the council fears that there will be litter. And that's about what we have. And I think that's correct, and I would simply restate it by stating, the record we don't quantify the litter problem, but we do quantify the plaintiff's availability of alternative evidence. But in terms of the litter problem, isn't the Supreme Court case law just preclusive on that point? When in Schneider and other cases, they say, if you have a litter problem, ban the littering. And I don't see what's different between people handing things out and people putting them on the cars as to that issue. Well, I think one of the reasons is that there's really two interests to support the ordinance. One is litter, but the other is the protection of private property, the owners of vehicles who don't want leaflets placed on their cars. That's a practical matter. That's not litter. You're talking about litter on the streets. What I'm saying, Your Honor, is there are two substantiations or justifications for the ordinance. One is the litter, and the second is the protection of those personal property rights for those people. But we've been over it. I mean, it seems to me that they both have major problems. The first one is that the Supreme Court's talked about it a lot, and the second one is that the private property rights cut both ways, and that we don't know that the people don't want this on their property. I can't deny that. And also, these documents, as wild are going on the car, in terms of the appearance, I mean, we put parking tickets under the windshield. People put all kinds of things on their cars. I mean, the notion that we're trying to protect against visual blight when people stick all kinds of, you know, bizarre things on their cars and bumper stickers and signs and so on seems somewhat fanciful. Well, I think the fact of the matter is there is no black and white answer, and I think that we find that with the majority of our First Amendment cases. Okay. So that answers the first question. It's a serious legal issue. And then we get to what Judge Miner said, is where is the balance of hardships? And if I may, the point that I would like to make is that all of these cases, and I submit that's the way this case should be decided, are upon application of the time, place, and manner criteria and analysis. And under this case But we're not deciding the case. But that's what the We're just saying is there a serious legal issue. But that is what the district court did, and I would respectfully submit that unless you find an abuse of discretion with its decision, then I think you have a problem. This is a purely legal issue, really. Well, but besides which, there was probably an abuse of discretion just in deciding more than he needed to decide and not deciding simply whether there was a serious legal issue. We have two prongs to this question on the preliminary. And one is, is it a serious legal issue? Or it seems to me you just said yes. And the second is what Judge Miner inquired about, which is where is the balance of hardships. Correct. I agree with that. And so that's what we really ought to be talking about. And I think Judge Miner pretty well laid out the issue, which is, you know, is the fact that this isn't a total ban, but there are other ways of getting your message across to some people. Does that then minimize the First Amendment issue so that the harm to the city outweighs it? And the harm to the city, we don't have anything in the record as to whether the people who are getting it, whose private property is going to receive these leaflets, whether there are more or less who like getting it, or does it matter that there's one person who doesn't like it, or 10, or 10 percent, or 20 percent? You know, there's no facts. Or does it matter that, you know, there's one piece of paper, a ton of paper on the streets? Do we need evidence of that? Or does the fact that it will result in some litter, how do we weigh all that against the First Amendment infringement in order to find hardship? I think that's a problem. I think that's the issue. Okay. Well, it's up to the movement to show that the balance of hardship tips in its favor. Has it shown that? It has not. Why? As I said before, while the record does not adequately quantify the extent of the legal of the litter problem, I think the record clearly demonstrates the alternative avenues available. Well, but what they basically say is, yes, we have alternatives, but they're worse. No. I think they're saying they're just inadequate. Inadequate may not be a hardship. Correct. I mean, I think that really is the decision that Your Honors have to make, is to look at the alternative avenues. Well, if it's inadequate, then there's a hardship, no? Well, I question whether. What about the Samartano case? Do you know that one? Samartano, which is the one about the people wearing gang insignia or motorcycle club insignia in court, inside a court. And it was a preliminary injunction case, which is why it's interesting. And the question was whether there the issue of preliminary injunction, which we did. And with regard to the First Amendment issue, let's see. My impression is, although I can't find it right this minute, that, let's see. The Supreme Court, this again is an instance where, I mean, if what they're trying to do is to simply tell people about their club, they can do it right outside the courthouse. So the question is, do they have a right to do it inside the courthouse? And the Supreme Court has made clear that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury. And the fact that a case registers First Amendment questions compels the finding that there's a potential for irreparable injury. So it seems to me that was the closest in case. But you're not aware of it? You know, I recall the case, but I did not review it in connection with this case. And obviously ---- It is a preliminary injunction case. That's why it was interesting. Aside from the rest of it, it's not particularly analogous, but the First Amendment aspect, the preliminary injunction aspect. And I don't recall it with sufficient detail to comment on it. All right. Okay? Okay. Thank you very much. Thank you. I'll actually start with the San Martino case, because I actually wanted to make a point about that particular case. That was a case for dealing with a nonpublic forum. So you're dealing with a reasonableness test rather than time, place, and manner. And even under that much lower threshold, what the Court said in that case is there must be evidence in the record to support a determination that the restriction is reasonable. And again, there is no evidence in the record here whatsoever under a much higher standard, the time, place, and manner test, versus simply a reasonableness test. So I think ---- What about the other prong, that is, the First Amendment irreparable harm question? I mean, certainly, I mean, we may be somewhat habitually moving that sentence from one kind of case to another in the sense that plainly if people can't speak at all, there's irreparable harm. But what about if they can speak, but less so? Well, I think Elrod was very clear that it was what you looked at, whatever type was being affected. In this case, a vehicle lethal being banned, and not just the whole universe. So it's a test that's separate than the third prong under time, place, and manner, which is whether you have other alternatives that you can utilize. So it's really not looking at the third prong of time, place, and manner. It's really looking at whether you would eviscerate that particular type of speech. And I believe that Sam Matano carried that over from the Elrod case. Well, Elrod wasn't even an actual speech case, right? It was a governmental patronage case, wasn't it? Yes, that's correct. But I believe Sam Matano was more relevant because it was a case in which they couldn't speak inside. They couldn't wear their shirts inside the courthouse, but they could wear it right outside the courthouse, right? That's correct, yes. And they could presumably reach the same audience before they went into the courthouse. So in terms of alternatives, there were certainly alternatives. Sure, they had plenty of other alternatives. And that's why I'm saying it's a completely different test than the third prong of time, place, and manner. Well, you have other alternatives here also. And then how do you have a hardship? A hardship in this regard? Well, it's not a hardship. It's a balancing of the hardships. And you're balancing free speech, which is one of the... Well, how does that tip in your favor? Because you're balancing... Of course, it's free speech. Because you're affecting free speech, and you're balancing that against litter prevention, and there's no evidence in the record whatsoever that there's even a litter problem with vehicle leafleting. Well, does a municipality have to make findings of fact every time it enacts an ordinance? This ordinance is named Litter. It has a whole bunch of provisions in it. It seems clear what the purpose of the ordinance is, at least to me. It is clear. Litter and litter alone. Yeah. And then you have to define litter, of course, but... But to answer your question, you're balancing free speech, which is one of our most cherished rights in this country, versus something that might be a problem, might not be a problem. We don't know because the city has presented... Well, I suppose it is how you approach hardship. Is it hardship in communicating, or is it hardship because you're balancing litter against speech? Well, I think you're balancing the hardships to both sides, litter against speech. And there's, like I say, there's no evidence that there's a litter problem. But aside from there being no evidence that there's a litter problem, isn't there, again, several binding Supreme Court cases saying that litter is simply not an interest under these circumstances? I don't understand what the difference is. They basically say if you have a litter problem, ban the litter. Are you referring to the... Schneider, Martin, and so on. Yes, that line of cases, you know, basically stands for the proposition, which this case also said, in Carrera's case, annoyance and inconvenience, however, are a small price to pay for preservation of our most cherished rights. And that's another way of saying that, you know, from the Ninth Circuit. But on the balance, there's also the question of aesthetics that the Supreme Court has dealt with. And if the city had enacted its law and had named aesthetics as one of its goals, that would be an issue here. Well, isn't litter a blight on aesthetics? Can't you say that there is a relationship between the two? There could be, but in those cases where it's really been an issue have been the billboard signs. Again, where you're leaving a sign up for long periods of time. I'm not quite sure what the issue is. Is the aesthetics problem one of the offense to the eye of the papers on the windshield, as opposed to the litter on the street? Or is litter, in addition to being litter, an aesthetics problem? Because I thought that that was the problem about litter, basically, was that it gave you a dirty city instead of a clean city. And there were really two issues there. The first one is whether because the city never named aesthetics or technical. Well, forget that. Doesn't litter comprehend aesthetics? We don't want litter because the streets look messy. Isn't that aesthetics? Well, but the courts have held that you have to actually name it. But isn't the problem that, yes, litter on the street is an aesthetic problem, but unlike other aesthetic problems, it's fixable, i.e., somebody can pick it up. And so the real problem is that the city then incurs the cost of picking it up. It's not like signs and stuff which are just going to stay there. It's easy to fix, except it costs money. And the question, it seems to me, which was addressed by the cases in the 30s, is does the balance, it says, as between speech and the city's obligation to pick up litter, the speech wins, especially because the city can do other things, like prosecute people who throw things on the ground. So I don't know why that's not a resolved question. I don't know why we're worrying about that piece of it. It's unresolved only because, as far as I know, there hasn't been a Supreme Court case that has the fact pattern of vehicle leafleting in front of it. So we couldn't really shift it from homeowners in a home, leafleting in a home, versus leafleting on the street. And on the street, too. But leafleting on the street. And, I mean, as a practical matter, when you're talking about leafleting on the street, people don't have time to look at the thing to see whether they want it or not, so they take it. And then they either throw it out or don't throw it out. I mean, yes, it's supposed to be a willing listener, but the number of people who actually don't take it is probably not enormous, because it's a pain in the neck. You know, when I walk down the street and somebody hands me something, I take it and then I do whatever I'm going to do with it. I look at it. I probably don't. I refuse it. I refuse something that's over to me. So, you know, I don't think you can make a general determination. But in any event, there's no real – The other interest that's being asserted is the interest in protecting people's private property from stuff on it that they may not want. So how does that interest work with regard to the balancing right now on a plural injunction? Well, my first argument would be that it's not a valid interest in this case because the city never claimed that interest when they enacted the law. And this Court in Desert Outdoor stated, you actually have to have the reasons for an ordinance stated in the ordinance itself for it to apply. And, for example, we know litter is the problem. That's the problem the city identified when it enacted the law. It never identified the protection of private property as one of its interests. But in the littering statute, you find this particular ordinance that's under attack. And that talks about putting material on a car. That's correct. But how is that any different than putting a leaflet on a home? Well, do you have any cases about leaflets on homes? I'm about leaving leaflets on the doorstep or throwing The New York Times over the fence as opposed to handing it to somebody, knocking on the door and handing it to somebody. I don't have any cases with me, but I have a great quote from the Watchtower case, which was handed down about six years ago. And it says, quote, for over 50 years, the Court has invalidated restrictions on door-to-door canvassing and pamphleteering. Yeah, but that doesn't deal with the precise question of whether you can leave something, whether the government, for example, could pass a statute saying, yeah, you can knock on the door and you can try and give something to somebody, but if nobody's home, you can't leave it on the doorstep. There's clearly a case law on that point. I couldn't find it. I'd be curious. Would you like me to submit something if I can find it? Yeah. It may be assumed in these cases, but I don't know that it's ever been pulled out. That could be. It could be an assumption, but I'll take a second look at that. I know one issue that was raised. I believe it does make a difference whether the form is private or public property in this case, because the government has much more leeway to control speech on its own property and has much less authority to control speech on private property. So I believe the form analysis is important in this case, and that's why I briefed it so thoroughly. All right. I think your time is up also, unless you have something urgent. No, I think that covers it, Your Honor. Thank you. Thank you, Counsel. All right. Case just argued will be submitted. The final case of the morning is Hallicky v. Carroll Shelby International.
judges: Reinhardt, Berzon, Miner